The next case on the calendar is United States v. Zandi. Good morning, your honors. May it please the court, my name is Khalil Al-Assad and I call back to the district court for resentencing consistent with the statute 3582C, which is a discretionary statute or allows for discretionary resentencing if a defendant meets two conditions. The district judge below offered two reasons for rejecting the reduction. However, before addressing the district court's opinion and the two reasons advanced by the court below, I would like to address the letter that was filed by the government on February 1, which letter brings to the court's attention a case that was decided after this appeal was fully Now, that case does address the same issue raised in this case. However, the one book rule on which the government relies was never raised in the opposition papers, was never raised in the court below, and we haven't had a chance to adequately address it. Now, the letter addressed to the court on February 1 implies that... You received a copy of that letter as well. Yes, your honor. And the letter implies that since Ramirez was decided after the briefing of this appeal was done, that the letter could be considered as new law. However, the case relies on old precedents of this court, and the one book rule is not a novel rule, and under this court's own precedent, arguments that are not raised and not sufficiently raised here or not even mentioned in the brief are considered abandoned and will not be considered absent manifest injustice. Can that letter go to the ex post facto argument here? Yes, your honor. The letter... Before we get to the ex post facto argument, I'm having difficulty with your original point, your first point, that somehow the sentence should have been altered because he was found guilty, or it was established in sentence, that there were substantial amounts that were not... The amounts were so substantial that he couldn't benefit from these amendments to the guidelines. Correct? That is correct, your honor, and that is the first reason advanced by the court below. However, this court has said that the language in the resentencing statute, which... You can't get to the second point unless you persuade us on the first point. Correct, and the first point is that a defendant has to have been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the commission. The sentencing range here was final offense level of 38, right? Which, your honor... Wait, hold on a second. Which was 262 to 327 months. That was the range. Correct. The judge gave him less than that, but he didn't give him a different range. That was the range. Right? That was the applicable... The judge said the range was less than 262 to 327. Correct, your honor. That was the range... Wait, hold on. So then the next question is, has that range been changed under amendment 782? In other words, the level 38, 262 to 327. And if it hasn't, then doesn't 3582c not even apply here? Well... It's the same range. It's the same range. Most of the ranges were lowered, but not all of them. But if the court looks at this case the way it looked at it in, for instance, United States v. McGee, and the court said, and I quote, a defendant's sentencing range is based on not the section or not the range that was recommended by the probation department, but it is based on the sentence that is actually imposed. Wait a minute. You're trying to extrapolate a new range based upon the 240-month sentence that was below the prior range. And I don't see how you can get there. Because the 240-month sentence, your honor, corresponds to an offense level of 36. And so... Mr. Ellisott, as you know, I'm a district judge, right? Yes, your honor. I sentence people every week, sometimes every day in a week. And quite frequently, I sentence people to a sentence below, typically because it's just a variance, not even a departure, but a variance. So in this situation, if I concluded it was level 38, and I also concluded, notwithstanding the fact that the bottom of the range is 262, for the following three reasons I think 240 months is the right number, I haven't changed the range. The range is still level 38, 262 to 327. I mean, it happens every day of the week. It would be novel, in my experience, to think that by imposing a sentence below the range, or above the range for that matter, it could be above too. I mean, what if he had imposed 360 months? Does that mean the range is even higher than the one that he found was the applicable range? Well, then we wouldn't have the argument we're making now if it was above, your honor, but... I know that, but I mean, that's the implication of it, though, right? You're saying that the range changes depending on where the sentence actually ends up. Well, as one district court noted, and this is a district judge from Connecticut, and the case is United States v. Manafi, and it's in our brief, the statute's underlying purpose, the resentencing statute's underlying purpose, is to correct and rectify unjust or unduly harsh sentences. And with that in mind, the court looked at the language based on a sentencing range that has since been lowered and did... But it's been lowered for certain... The way it's constructed, as I understand it, and correct me if I'm wrong, it's been lowered for certain quantities, but not for other quantities. Right, but in that... Here, the quantities were so substantial that notwithstanding all of these amendments, the same range still applied. Yes, your honor, but in the case the court said, because the defendant was granted a departure under Booker and not an authorized variance or a guideline authorized departure, he was ultimately sentenced based upon an offense level determined by his drug quantity. This is not... Our case, unlike the Manafi case, is not a departure. It's not as if the judge said, I'm going to depart from level 38 to level 36 and sentence him as if he were in level 36 or level 30 or level 20. I mean, there are circumstances that would warrant that, but he didn't do that here. He said the level is level 38, 62 to 3, whatever it is. But a departure under Booker is incorporated into the sentence itself and... This is not a departure, though. Well, originally... It's a variance from the guideline. Right, right. A variance under Booker, a non-authorized variance under Booker under the court's discretionary sentencing authority is still incorporated into the sentence itself. And this court has said that it is commonsensical to look at the actual sentence imposed and regardless of whether it is a variance or a departure, you look at the sentence and if the sentence reflects a different range than the one applicable at the time of sentencing, then that would give the defendant a chance to receive a lower sentence. Congress passed the statute, right? 3582C. What you're saying... I mean, I understand what the district court did in that case in Connecticut, but where is that in 3582C? That, you know, we'll give the defendant a break, we'll make it easier on him because, well, after all, he got a lower-than-guideline sentence to begin with, so we'll assume that the guideline range was the lower run and now we'll go down from there. Where is that contained within the statute? Well, the statute does not really speak to what based on a sentencing range means, which is the operative language here, but we think the purpose of the statute favors a liberal interpretation, one that would allow defendants who are serving long sentences to not get a reduction but to at least have the opportunity for a reduction. And the district court below did not reject the defendant's motion because it believed the defendant was not entitled to a reduction. It clearly said that . . . It cited as the first reason that his offense level has not changed since the drug quantity of 450 kilograms would still yield the same offense level, but then it said, in any event, I am not allowed to grant the motion because based on the Supreme Court's decision . . . Could we look at it that Congress knew, or excuse me, the commission knew precisely what it was doing when it lowered the sentences for certain amounts but not others and that therefore the will of the agency was to keep the sentences for the higher quantities? Well, that may be, Your Honor, but still under the statute and not the commission's guidelines, the defendant here received a sentence that was based on a sentencing range that has been lowered and even though his case or the drug quantity in his case yielded the same offense level, considering the departure that he received or the variance that he received at sentencing, that would yield a different sentencing range. The word variance is kind of the key word, right? Because variance means the range was to . . . I keep reminding myself how the commission . . . It was 262 . . . I don't know, but 262 to 327. That's the range. He got a variance from the range, but the range is still 262 to 327 and that range was not reduced pursuant to 782, Amendment 782. That's the problem you have, I think. Which is why we are not asking for a definite reduction in the sentence that would correspond to levels in the offense level. What you're saying is that if it was remanded and if the judge still gave him 240 months and explained why, that that would be within its discretion. Exactly, Your Honor. And that is all we are asking, an opportunity for discretionary sentencing, but the judge below believed that the guideline amendment, which is 1B.1.10, which was passed in 2011, that was declared binding by the Supreme Court in Dillon v. United States and the district court cited that decision to say that I am precluded from granting the motion even if I were inclined to reduce the sentence. And that is different from each predecessor version of that amendment, which allowed re-sentencing, discretionary re-sentencing, when the original sentence reflected a very... not a variance, a departure or a variance from a downward variance. And when the defendant was originally sentenced in 2007, the statute or the guidelines said when the original sentence represented a downward departure, a comparable reduction below the amended guideline range may be appropriate. And the only limitation that that guideline imposed was that the court could not reduce the sentence below time served. And it wasn't until 2011 that the commission enacted the amendment at issue here, which basically limits any reduction in sentence for eligible defendants to cases where the departure was based or the very... where the departure was based on substantial assistance to the government, which has to be requested by the government at sentencing. And so that excludes all other defendants and all other departures or variances from the scope of the guideline. So we'll hear from your adversary? Yes, Your Honor. Thank you. Good morning. Nomi Berenson on behalf of the United States. The defendant appellant argues that he's eligible for resentencing under section 3582 for two reasons. First, he asserts that the sentence imposed by the district court necessarily reflects his applicable sentencing range under the guidelines and that he was therefore sentenced based on a level 36 offense. Second, he argues that the policy statement in the guidelines section 1B1.10 violates the ex post facto clause. As this court recently rejected that very argument, I will focus my time on the first argument, unless the court has questions about the ex post facto clause. Zandy was in fact sentenced based on an offense level 38. That is the offense level that was set forth in the pre-sentence report as set forth by probation and adopted by the district court at sentencing. It's also the offense level that was in fact included in the defendant's own submissions at sentencing, and it's based on the drug quantity. It remains unchanged by Amendment 782, and the drug quantity is nowhere near the threshold for a level 36. The amount of narcotics involved here were 300 kilograms of methamphetamine and 432 net kilograms of pseudoephedrine. The argument that the appellant was based on an offense level of 36 because his actual sentence fits into that portion or corresponds to that part of the guidelines matrix is novel and simply doesn't withstand scrutiny. Were that position to be adopted by the court, references to below-guideline sentences as used in 3582 and elsewhere would essentially lose meaning because it would mean that the guidelines calculation is necessarily changed to reflect whatever sentence is imposed. There would never be a below-guideline sentence then. Right? If the guideline ranges 38, 262 is the bottom, and I gives 240, then I think what you're saying is that there would never be a below-guideline sentence ever because you just reset the guidelines. That's exactly right, and I think that that's the position that the appellant is asking the court to take. Where would you reset the... Where would the 240 relate to the guidelines? Would it be the top? Would it be the bottom? Would it be the middle? Under his theory. Under his theory... His theory, there's a new set of... a new guideline. But what I have trouble with is, what would that guide... what guideline would that be? The 240 is consistent with a bunch of different guidelines, right? I think that's right. I think what the appellant asks the court to do is to hold the criminal history category constant, which in this case was a criminal history 2 at the time of sentencing. And so then... The 240 itself as a sentence doesn't give you the answer as to what the guideline... what a guideline would be. You can't do the reverse very easily, right? No, you can't. You have to have additional information in primarily the criminal history category. But if you hold that constant... Even within that, I mean, the 240 could be the middle of the guidelines or it could be the bottom or it could be the top. And they'd be three different guidelines. I think that's right. I think, um... We don't even know what the guideline would be. He's saying 36, but who knows? Yes, and I think respectfully the reason that level 36 was offered is because in that instance the appellant would benefit from application of Amendment 782. But in any event, your point is that the guideline that was... that the sentence was based on was 38. Yes. And it wasn't changed. That's correct. I think moreover to the extent that appellant relies on this court's prior decisions in McGee and Martinez those cases are an opposite. They analyzed defendants who were sentenced under more than one section of the guidelines in particular the career offender guidelines and there was no such reference in this case to another section of the guidelines. It was simply based on the drug quantity. And the Sentencing Commission subsequently rejected our approach in McGee if I recall correctly. Yes. Unless the court has further questions, I would yield the remainder of my time. Thank you. Your Honors, I would just like to make two points. First, when the resentencing statute 3582 was written, Congress obviously did not have Booker variances in mind and so in interpreting the language based on a sentencing range that has since been lowered there shouldn't be a distinction between guideline authorized departures and variances under Booker because that would make Martinez and McGee on all four with this case, if the court were to treat guideline authorized departures the same as Booker variances and so because the language of the statute was written before Booker Congress was not contemplating restricting the scope of the statute only to sentencing ranges that have been lowered to defendants who received a below and second the approach Congress is well aware of Booker there have been at least two sort of across the board sentencing reductions from the sentencing commission in the last, I think one was in 2010 and this one was 2014 they certainly are well aware of Booker and they haven't done anything right to 3582 yes your honor but this court the law really does not equate congressional silence with congressional approval and so the last point I want to make is Judge Livingston you mentioned that the approach in McGee was rejected by the commission but it was only rejected after the defendants sentencing date and so if the court were to agree that the ex post facto clause prohibit the retroactive change in a law that does create a sufficient risk of a or that does eliminate an opportunity for a due sentence then McGee's approach would apply because it was the approach that was prevalent at the time of thank you your honors thank you both the court is going to take a brief recess before the final case argued case on the calendar this morning it will be very brief and I'll ask the deputy clerk to announce it thank you